**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMOS JAMES SINGLETON,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LIEUTENANT ROBINSON et al.,** | : | **No. 14-2382** |
| *Defendants*. | : | |

PRATTER, J.                                                           JULY 6, 2015

## MEMORANDUM

### I.      INTRODUCTION

Amos James Singleton, a prisoner held in SCI Benner Township, sues Pennsylvania Department of Corrections personnel Lieutenant Robinson, Wendy Shaylor, Jay Lane, and John Doe No. 1 under 42 U.S.C. § 1983. In Count I, he alleges that Lieutenant Robinson and John Doe No. 1 violated his First Amendment right to access the courts by destroying certain irreplaceable documents related to his criminal and post-conviction proceedings. In Count II, he alleges that Ms. Shaylor and Mr. Lane transferred Mr. Singleton from SCI Graterford to SCI Benner Township in retaliation for his filing a grievance based on the destruction of his legal papers, thereby violating Mr. Singleton's First Amendment rights. Lieutenant Robinson, Ms. Shaylor, and Mr. Lane move to dismiss the Amended Complaint.

### II.     ALLEGATIONS IN THE COMPLAINT[1]

Mr. Singleton was arrested in November 2012 on suspicion of participating in a bank robbery. He was later charged in the Philadelphia County Court of Common Pleas with crimes related to the alleged bank robbery (the "State Case") and, based on the alleged discovery of a

---

[1] When ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509 n.1 (2002).

1

handgun in a common area of Mr. Singleton's apartment building at the time of his arrest, he was also charged with a separate robbery and other crimes in the United States District Court for the Eastern District of Pennsylvania (the "Federal Case"). Mr. Singleton pleaded guilty in the State Case, and his sentence was entered on January 22, 2013. Five months later, on June 22, 2013,[2] a jury convicted Mr. Singleton in his Federal Case. He was sentenced in his Federal Case on July 26, 2013.

During the course of the State and Federal Cases, Mr. Singleton was housed at the Federal Detention Center ("FDC") in Philadelphia. After pleading guilty in the State Case and being convicted in the Federal Case, but before his sentencing in the Federal Case, Mr. Singleton prepared a Post-Conviction Relief Act ("PCRA") petition, attacking his conviction and sentence from the State Case on the grounds that the prosecution withheld evidence and that Mr. Singleton's counsel rendered ineffective assistance. Mr. Singleton's claims were based on evidence and materials that were unavailable to him until the start of his Federal Case. Mr. Singleton alleges that his PCRA petition "is legally meritorious and not frivolous, as it demonstrates that his guilty plea in the State Case was unlawfully induced by the prosecutor's failure to provide key exculpatory evidence during discovery." (Compl. ¶ 19).

Mr. Singleton's work on the PCRA petition included "preparing notes containing his strategy, mental impressions, theories and other work product; generating highlighting and adding his notes and thoughts to briefs, motions, trial exhibits, and other documents related to the State Case and Federal Case; [and] obtaining documents and information from third parties that were not part of the record or obtained by his counsel in the Federal Case or State Case." (Compl. ¶ 16). These materials, collectively referred to as the "Legal File," included "unique and

---

[2] The Amended Complaint puts this date as June 22, 2012, but the parties agreed at oral argument that the correct date is June 22, 2013.

irreplaceable documents and versions of exhibits and court filings, and contained the support and information necessary for Mr. Singleton to prosecute the claims being asserted in his PCRA petition." (Compl. ¶ 17). For example, Mr. Singleton asserts that the Legal File contained evidence that the prosecution in the State Case unlawfully withheld exculpatory evidence.

Mr. Singleton was transferred from the FDC and federal custody to SCI Graterford and state custody in Schwenksville, Pennsylvania, and he brought the Legal File with him. Upon his arrival at SCI Graterford, Mr. Singleton was ordered to present his personal property, including his Legal File, for inspection. SCI Graterford personnel, including Lieutenant Robinson and John Doe No. 1, inspected Mr. Singleton's belongings and allegedly began to throw portions of his Legal File and other personal property in the trash. Mr. Singleton immediately informed them that the bag contained his Legal File and materials relating to his pending cases, but they ignored Mr. Singleton and destroyed Mr. Singleton's Legal File. Mr. Singleton alleges that the destruction of his Legal File has "materially hindered" his ability to pursue the arguments and claims asserted in his PCRA petition. (Compl. ¶ 32).

Mr. Singleton attempted to obtain relief for the destruction of his Legal File through the Department of Corrections grievance process. On September 22, 2013, Mr. Singleton filed a grievance with Wendy Shaylor, the SCI Graterford Grievance Coordinator. Department of Corrections Policy ADM-804 gives every inmate access to a formal procedure to seek resolution of issues that arise during the course of his or her confinement, and prohibits "the transfer of an inmate until the grievance procedure has been completed, including the appeal process." (Compl. ¶ 37). On October 15, 2013—one day before the October 16, 2013 deadline by which Ms. Shaylor was to respond to Mr. Singleton's grievance—Mr. Singleton was transferred from SCI Graterford to SCI Benner Township. Ms. Shaylor never responded to Mr. Singleton's grievance.

On October 18, 2013, after Mr. Singleton was transferred to SCI Benner Township, he appealed his grievance to Jay Lane, the Deputy Superintendent for Facility Management. Neither Mr. Lane nor any other Department of Corrections employee responded to Mr. Singleton's appeal. Mr. Singleton filed yet another appeal on November 6, 2013, this time to the Pennsylvania Department of Corrections' Chief Secretary's Office of Inmate Grievances and Appeal, but Mr. Singleton never received any response.

### III.   LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible

4

claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 617 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). The Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and internal quotation marks omitted).

### IV.   DISCUSSION

"To determine the sufficiency of a complaint under the pleading regime established by [*Iqbal* and *Twombly*], a court must take three steps: First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

A.      MR. SINGLETON'S ACCESS-TO-THE-COURTS CLAIM (COUNT I)

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014). At the motion-to-dismiss stage, the plaintiff may satisfy the "actual injury" requirement with allegations that the plaintiff lost his or her ability to prosecute "a nonfrivolous, arguable claim" as a result of the defendant's conduct. *Lyons v. Sec'y of Dep't of Corrections*, 445 F. App'x 461, 464 (3d Cir. 2011); *see Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). The Supreme Court has suggested that plaintiffs in backward-looking access suits "should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued . . . ." *Christopher*, 536 U.S. at 417-18.

In support of Count I, Mr. Singleton alleges that (1) he had a non-frivolous and active PCRA petition related to the State Case and an arguable opportunity to appeal the Federal Case; (2) Lieutenant Robinson and John Doe 1 destroyed his Legal File on August 15, 2013; (3) the Legal File contained "irreplaceable" and "essential" evidence and materials; and (4) as a result, his opportunity to pursue his claims has been materially hindered. (*See* Am. Compl. ¶¶ 50, 51). But Mr. Singleton's allegations regarding the viability of his underlying legal action are conclusory and unsupported by any other allegations in the Amended Complaint, so they are not entitled to the assumption of truth.

Consequently, because there are no allegations from which the Court can infer that Mr. Singleton's PCRA petition or federal appeal are non-frivolous at this point, the Amended Complaint lacks the necessary allegations to survive the motion to dismiss. Mr. Singleton argues that this case is like *Lyons*, in which the prisoner-plaintiff's complaint contained sufficient

allegations regarding the underlying non-frivolous claim to survive a motion to dismiss. However, in *Lyons*, the prisoner-plaintiff alleged specifically that the confiscation of his legal materials prevented him from pursuing a *Brady* claim "premised on the prosecution's alleged failure to disclose police records pertaining to a purported alibi witness, Joan Edenfield." 445 F. App'x at 464. In contrast, here Mr. Singleton simply alleges that the basis for his PCRA petition was the "withholding of evidence by the Commonwealth of Pennsylvania and ineffective assistance of counsel." (Am. Compl. ¶ 18). Without more specifics as to the factual basis for the claims that were allegedly prejudiced by Lieutenant Robinson's conduct, Mr. Singleton's allegation is conclusory and, for that reason, not entitled to the assumption of truth, leading to the conclusion that Count I fails to state a claim upon which relief can be granted.

Although the Amended Complaint lacks the necessary allegations to survive the motion to dismiss, the Court will grant Mr. Singleton leave to file a Second Amended Complaint so that he may endeavor to include more specific, non-conclusory allegations demonstrating that (1) his PCRA petition and/or the appeal of his Federal Case are not frivolous, and (2) the destruction of his Legal File materially hindered his prosecution of those action. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). At oral argument, Defendants claimed it would be futile for Mr. Singleton to file a Second Amended Complaint because he filed post-trial motions, a direct appeal, and a PCRA petition *before* the destruction of his legal file. Therefore, according to Defendants, any materials in Mr. Singleton's Legal File that were relevant to his case would have been included in one of his previous filings, and the destruction of the Legal File could not possibly have impaired Mr. Singleton's access to the courts. But Defendants' simply assume that Mr. Singleton included in his prior court filings all the materials from his Legal File that were relevant to his case. On the strength of an assumption only, the

Court will not deny Mr. Singleton the opportunity to come forward with factual allegations supporting his access-to-the-courts claim.

B.    Mr. Singleton's Retaliation Claim (Count II)

Viewing the allegations in Count II of the Amended Complaint in the light most favorable to Mr. Singleton, Count II alleges that Ms. Shaylor and Mr. Lane transferred Mr. Singleton and refused to respond to his grievances in retaliation for his filing of the grievances.[3] This, Mr. Singleton alleges, violated his rights under the First Amendment.

To state a claim for retaliation, a prisoner-plaintiff must allege (1) that the conduct which led to the alleged retaliation was constitutionally protected, (2) that he suffered some adverse action at the hands of the prison officials, and (3) that there exists a causal link between the exercise of his constitutional rights and the adverse action taken against him. *See Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001).

In support of Count II, Mr. Singleton alleges that (1) he filed a grievance with Ms. Shaylor on September 22, 2013, (2) he was transferred the day before she was supposed to respond to his grievance, (3) he filed a grievance with Mr. Lane on October 18, 2013, (4) neither Ms. Shaylor nor Mr. Lane responded to his grievances, and (5) Ms. Shaylor and Mr. Lane intentionally transferred him in retaliation for filing his grievances. The allegation that Ms. Shaylor and Mr. Lane intentionally transferred Mr. Singleton *in retaliation for his filing grievances* is not entitled to the assumption of truth because it is conclusory. *See Iqbal*, 556 U.S. at 680-81 (holding that a bald allegation that the defendants' actions were motivated by

---

[3] Although Count II of the Amended Complaint seems to allege the existence of a policy or custom of transferring inmates improperly, the Court will construe Count II to allege retaliation in violation of the First Amendment. Even if Count II purports to state a claim relating to an unconstitutional policy or custom, there are no non-conclusory allegations in the Amended Complaint that could support such a theory of liability.

discriminatory animus is not entitled to the assumption of truth). All the other allegations are non-conclusory and therefore entitled to the assumption of truth.

The Court finds that Count II does not state a plausible claim for relief for three reasons. First, Mr. Singleton's transfer does not constitute an adverse action under the First Amendment. A "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Ellerbe v. LaPenta*, No. 08-cv-5889, 2009 WL 901010, at *4 (D.N.J. Apr. 2, 2009) (quoting *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003). If Mr. Singleton alleged additional facts explaining why the transfer in this case rises to the level of an adverse action, his Amended Complaint might survive a motion to dismiss. *See Madison v. Horn*, No. 97-3143, 1998 WL 531830, at *13 (E.D. Pa. Aug. 21, 1998). However, the Amended Complaint is completely devoid of factual allegations demonstrating that the transfer constituted an adverse action. As a result, the Amended Complaint fails to state a claim for retaliation with respect to Mr. Singleton's transfer.

Second, the Amended Complaint fails to state a plausible claim that Mr. Singleton's protected activity *caused* his transfer. To survive a motion to dismiss, the Amended Complaint must contain sufficient allegations that the protected activity was "a substantial or motivating factor" in the adverse action. *Rauser*, 241 F.3d at 333. Here, Mr. Singleton only filed a grievance with Mr. Lane *after* his transfer, so it is not plausible, based on the bare allegations in the Amended Complaint, that *Mr. Lane* was involved with the transfer or was motivated to transfer Mr. Singleton because of his protected activity. Moreover, Mr. Singleton does not allege that Ms. Shaylor had any personal connection to Lieutenant Robinson, John Doe No. 1, or the destruction of Mr. Singleton's Legal File. As Defendants rightly point out, Ms. Shaylor's job is to handle

grievances, so it is not plausible that she would retaliate against Mr. Singleton simply for filing a grievance absent some additional factors, and no such factors are alleged here. Although Mr. Singleton argues that the Court may rely on temporal proximity to infer causation, *see Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997), such proximity must be "unusually suggestive" to satisfy the causation element of a retaliation claim, *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Mr. Singleton's transfer occurred just one day before Ms. Shaylor was due to respond to his grievance, but without more, the Court finds that the timing is not "unusually suggestive." Because it is not plausible, based on the allegations in the Amended Complaint, that the temporal proximity between Mr. Singleton's grievance and his transfer is "unusually suggestive," the Court finds that Mr. Singleton has failed to plead causation adequately.

Third, "[t]he mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009). Moreover, the Amended Complaint does not include allegations from which the Court may conclude that it is plausible that Ms. Shaylor or Mr. Lane failed to respond to Mr. Singleton's grievance *in retaliation for the exercise of his First Amendment rights*. Just as the Court in *Iqbal* found that the allegations of intentional discrimination were not plausible and therefore could not survive a motion to dismiss, the Court finds that the bare allegations that Ms. Shaylor or Mr. Lane refused to respond to Mr. Singleton's grievance in retaliation for the exercise of his constitutional rights are not plausible and cannot survive the motion to dismiss.

At oral argument, Defendants claimed it would be futile for Mr. Singleton to amend Count II with respect to Mr. Lane because no additional factual allegations could make it so that

Mr. Singleton's protected activity, which occurred *after* Mr. Singleton's transfer, was a "substantial or motivating factor" in Mr. Lane's alleged adverse action. The Court agrees. Defendants also claimed it would be futile for Mr. Singleton to amend Count II with respect to Ms. Shaylor because it is implausible that a grievance coordinator would retaliate against an inmate simply for filing a grievance. But with additional factual allegations (such as allegations suggesting that Ms. Shaylor had some relationship with Mr. Robinson), Mr. Singleton could state a plausible retaliation claim against Ms. Shaylor. Therefore, although there is little in the Amended Complaint to suggest that Ms. Shaylor actually retaliated against Mr. Singleton, the Court will not bar Mr. Singleton from coming forward with additional facts to try to support his claim, if any such additional facts exist.

## V.   CONCLUSION

For the reasons stated above, the Court grants the Defendants' Motion to Dismiss in its entirety, but grants Mr. Singleton leave to file a Second Amended Complaint in accordance with this Memorandum. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE